*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES IRA MAKI,

Defendant-Appellant.

UNPUBLISHED
December 10, 2019

No. 344914
Delta Circuit Court
LC No. 17-009479-FH

Before: SWARTZLE, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

Over the course of eight months, James Maki improperly received checks totaling over $128,000 from the bank account of an ailing, elderly man. This included a single check for $78,000, which defendant promptly used to buy a house. Several years later, when the time came to face the consequences for his criminal actions, defendant was still enjoying the warmth and comfort of the house he bought with the vulnerable adult's money.

The trial court sentenced defendant to serve six months in jail and five years of probation. As a condition of probation, the trial court ordered defendant to sell the house that he bought with the victim's money and to apply the proceeds of that sale to the $128,000 restitution amount that defendant agreed to pay as part of his plea deal. After initially agreeing that the probation condition was "justice," defendant later moved the trial court to strike the probation condition, arguing that the condition was invalid. The trial court denied the motion. Because defendant agreed at sentencing that it was "justice" to require him to sell the home and apply the sale proceeds to the agreed-upon restitution amount, defendant has waived appellate review of the issues he now brings before this Court. Therefore, we affirm the sentence imposed by the trial court.

## I. BACKGROUND

Defendant moved from Wisconsin to Michigan to live with his mother and her elderly boyfriend, John Britton. Between January 21, 2014 and September 10, 2014, defendant and his mother drained approximately $200,000 from Britton's bank accounts. This involved checks in the aggregate amount of just over $128,000 payable to defendant, including a single check dated

-1-

July 23, 2014, in the amount of $78,000. Within a week, defendant paid $75,000 in cash to buy a house in Gladstone—a house in which he continues to live to this day. Defendant has never disputed that he used the money obtained from Britton to purchase the home. On his income-tax returns, defendant did not disclose as income the $128,000 that he received from Britton's bank accounts.

When Britton's daughter discovered that her ailing father's bank accounts were empty, she contacted police. The prosecutor brought two separate criminal cases against defendant. In Docket No. 16-009407-FH, the prosecutor charged defendant with embezzlement of more than $100,000 from a vulnerable adult, MCL 750.174a(7). In Docket No. 17-009479-FH, the prosecutor charged defendant with filing a false tax return, MCL 205.27(1)(a). The trial court consolidated the two cases for a joint trial.

On June 26, 2017, the day before trial was scheduled to begin, defendant entered a no-contest plea. Under the terms of that plea agreement, the prosecutor dismissed the charge of embezzlement from a vulnerable adult and amended defendant's charge of filing a false tax return to "attempted false filing of a tax return." As a specific condition of the plea, defendant agreed to pay $128,000 in restitution to Britton.

Defendant's presentence-investigation report (PSIR) recommended a sentence of nine months in jail and five years of probation, subject to a variety of conditions. As relevant to this appeal, defendant's probation officer recommended that one of the probation conditions require that defendant sell his home and apply the proceeds toward his stipulated restitution. At the August 14, 2017 sentencing hearing, both defendant and his counsel acknowledged that they had reviewed the PSIR. The prosecutor asked the court to impose the probation officer's recommendation and advocated that the trial court require defendant to sell "the home that was essentially a windfall by the defendant's criminal activity."

Defense counsel argued that defendant should not receive the recommended jail sentence, stating that defendant "understands the restitution, but this is not a jail case." Defense counsel further stated that defendant "has begged me to beg you to just put him on a tether or something, but to not incarcerate him. And the recommendation of nine months is excessive." Importantly, defense counsel summarized his argument as follows:

> But I don't believe that a nine-month sentence is justice in this matter. I believe what's justice is that he's forgoing the money so the [victim's] family can have it, who never took care of [the victim], and *he'll find another place to live*. But incarceration for income tax invasion [sic] or failing to file an income tax return does not justify a jail sentence. This is a civil matter, a civil matter, and that civil situation has been taken care of through the restitution. [Emphasis added.]

The trial court concluded that defendant's offense involved more than just a failure to file accurate tax returns. Further, the trial court disagreed that a jail sentence was inappropriate, but noted that the recommended nine-month jail sentence was an upward departure from the guidelines range of zero to six months, and found that an upward departure was not appropriate on the facts of this case. Ultimately, the trial court sentenced defendant to six months in jail and

five years' probation. The trial court specifically stated that, as part of his sentence, defendant was required to sell the home that he purchased with Britton's money and pay all the funds obtained from that sale toward the stipulated amount owed for restitution.

As the trial court read defendant's sentence, defendant turned to Britton's daughter and made a gesture of "flipping of the middle finger." On September 1, 2017, the trial court held a criminal-contempt hearing to discuss defendant's conduct at the sentencing hearing. Defendant pleaded guilty to criminal contempt, and explained his conduct as follows: "I gave her the middle finger. I was feeling resentment at the time and anger. I didn't think I was going to get that much of time and fine and stuff." The trial court sentenced defendant to serve three days in jail for criminal contempt, to be served consecutively to the six-month sentence defendant was then serving for the underlying conviction.

On October 26, 2017, the trial court entered an order of probation that contained various conditions, including the following:

> You must pay restitution in the amount of $128,000 as follows: Restitution payable to the Delta County Clerk's Office. You must execute a wage assignment to pay restitution if you are employed and miss two regularly scheduled payments.

> * * *

> You must sell your home for fair market value through a realtor. The money received from this sale shall be immediately paid to the Delta County Clerk's office for payment toward restitution.

On February 14, 2018, defendant filed a motion to correct an invalid sentence. In the brief supporting that motion defendant argued that the trial court had improperly scored offense variables (OVs) 10 and 12. In addition, defendant set forth two short paragraphs arguing that the trial court improperly ordered him to sell the home that he purchased with Britton's money. Defendant argued that the prosecutor had failed to cite "any authority that would allow the Court to make this a proper condition of probation," and argued that the law concerning forfeiture proceedings applied only to drug crimes, not income-tax crimes. Therefore, defendant asked the trial court to modify the order of probation "to remove the requirement that he list and sell his real property to satisfy the restitution amount."

The prosecutor's brief response to defendant's motion primarily addressed the scoring of OVs 10 and 12. In addition, the prosecutor argued that defendant could not be "rehabilitated from this crime if he is permitted to retain the property that was gained by his criminal behavior." The parties later submitted supplemental briefs that more fully addressed the propriety of the probation condition. By order dated July 13, 2018, the trial court denied the motion to modify the order of probation, holding that the probation condition was valid and that the initial sentence it imposed was lawful.

In the briefs filed on appeal before this Court, the prosecutor argued that defendant waived any argument regarding the order that he sell the house purchased with Britton's money.

The prosecutor pointed to defense counsel's statements at sentencing that the order to sell the house was "justice" and argued that defendant thereby waived appellate review of this issue. Although defendant had the opportunity to do so under MCR 7.212(G), he did not file a reply brief addressing the prosecutor's arguments regarding waiver.

## II. ANALYSIS

Our Supreme Court explained that waiver reflects the intentional relinquishment or abandonment of a known right and that a party who waives his rights cannot seek appellate review of a claimed deprivation of those rights, considering that the waiver extinguished any error. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). A party cannot stipulate to a matter before the trial court and then argue on appeal that the resulting action was erroneous. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). A defendant cannot harbor error as an appellate parachute. *People v Henry (After Remand)*, 305 Mich App 127, 162; 854 NW2d 114 (2014).

Here, we conclude that defendant waived his right to seek appellate review of the trial court's probation condition that he sell the house that he purchased with Britton's money and apply all proceeds of that sale to the restitution that defendant agreed to pay Britton. At sentencing, defendant objected to the trial court's imposition of a sentence involving any jail time. Defendant did not object to the imposition of a sentence including an order of restitution. Indeed, defendant specifically agreed to pay $128,000 restitution to Britton as a condition of his no-contest plea. As defendant begged for a sentence that did not involve incarceration, he specifically compared and contrasted the probation condition that he sell the home with the prospect of serving time in jail, calling the probation condition "justice" and stating that he would have to "find another place to live," indicating affirmative agreement with the probation condition that he sell the home. In light of this express waiver, defendant cannot now argue that the trial court lacked authority to order that he sell the home that he purchased with the funds he obtained from Britton.

Affirmed.

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ James Robert Redford

-4-